# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PAMELA VINES, on behalf of<br>herself and all other similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:24-cv-00697-UA-JLW |
| v. | ) | |
| | ) | CLASS ACTION |
| REPUBLIC SERVICES, INC. | ) | |
| d/b/a BFI WASTE SYSTEMS | ) | Hon. Joe L. Webster |
| NORTH AMERICA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

---

## PLAINTIFF'S BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

i

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 4

STATEMENT OF THE CASE..................................................................................... 4

TERMS OF THE SETTLEMENT................................................................................ 6

LEGAL STANDARD ................................................................................................. 8

ARGUMENT ............................................................................................................... 9

   I. The Court Should Certify the Proposed Settlement Class...................................... 9

     A.   Numerosity is Easily Satisfied, and the Proposed Class is Readily Ascertainable. ...... 10

     B.   There are Several Questions of Law and Fact Common to the Class............................11

     C.   The Claims of the Named Plaintiff are Typical of the Claims of the Class. .................11

     D.   Plaintiff and Class Counsel Satisfy the Adequacy of Representation Requirement. ..... 12

     E.   For a Class seeking Certification over Common Questions of Law and Fact, the
Predominance and Superiority Requirements are both Satisfied........................................ 13

        1.   The Class's Common Questions of Law and Fact Predominate over Questions of
Individual Members. ............................................................................................................ 14

        2.   Class Certification is the Superior Method for the Fair and Effective Adjudication of
this Litigation. ....................................................................................................................... 15

     A.   The Settlement is Fair as an Outcome of Good Faith Bargaining and Arm's Length
Negotiation following Discovery. ....................................................................................... 16

     B.   The Settlement is Adequate and Reasonable Considering the Balance of Interests in
Further Litigation. ................................................................................................................ 17

     C.   The Settlement Satisfies the Additional 23(e)(2) Factors. ............................................ 20

   IV. The Notice Plan Set Forth in the Settlement Agreement is Appropriate............................ 20

CONCLUSION.......................................................................................................... 21

# **TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods. Inc., v. Windsor*, 521 U.S. 591, 617 (1997)..........................................................12

*Baranofsky, et al. v. Rousselot Peabody, Inc.*, Case No. 2084CV00896-BLS2 (Massachusetts
  Superior Court, Suffolk County (certified June 13, 2022)..........................................................15

*Ciarciello v. Bioventus Inc.*, 760 F.Supp.3d 377 (M.D.N.C. 2024) ...............................................7

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175, 94 S. Ct. 2140, 2151 (1974).........................18

*EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) .........................................................8

*Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 226-27 (E.D Va. 2003) ...........................11

*Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ...........................................................5

*Gonzales, et al. v. Clark-Floyd Landfill, LLC*, Case No. 10C02-1608- CT-000131 (Ind. Clark
  Cnty. Cir. Ct., Oct. 18, 2019) ................................................................................................15

*Hicks v. State Farm Fire and Cas. Co.*, 965 F.3d 452, 464 (6th Cir. 2020)..................................12

*In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 80 (D. Md. 1991) ....................................11

*In re Under Armour Sec. Litig.*, 631 F.Supp.3d 285, 308 (D. Md. 2022) ......................................10

*In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) .......................................7

*Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 323 (E.D. Va. 2003) ..............11

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019)..........................................11

*Sharp Farms v. Speaks*, 917 F.3d 276, 293-94 (4th Cir. 2019) ...............................................5, 15

*Stillmock v. Weis Markets, Inc.*, 385 Fed.Appx. 267, 273-74 (4th Cir.)........................................12

*Sutton v. Apex Environmental, LLC*, Case No. 20-CV-116 (Ohio Ct. Comm. Pleas, Jefferson
  Cnty.) (certified September 23, 2022)......................................................................................15

*Tatum v. R.J. Reynolds tobacco Co.*, 254 F.R.D. 59, 65 (M.D.N.C. 2008) .....................................9

*Wal-Mart Stores, Inc. v. Dukes* 564 U.S. 338, 350, 131 S.Ct. 2541 (2011) ...................................8

**Other Authorities**

Fed R. Civ. P. 23(e)(1)(B)(i) .......................................................................................................17

Fed. R. Civ. P 23(e)(2) ...............................................................................................................13

Fed. R. Civ. P. 23(b)(3) ...............................................................................................6, 11, 12

Fed. R. Civ. P. 23(e)(1)(A) ...........................................................................................................5

Fed. R. Civ. P. 23(e)(1)(b) .........................................................................................................17

Fed. R. Civ. P. 23(e)(1)(B) ...........................................................................................................5

**Treatises**

4 Newberg on Class Actions § 13:51 (5th ed. 2014) ....................................................................16

7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure*
  § 1779 (3d ed. 2005) ...............................................................................................................12

## INTRODUCTION

Plaintiff Pamela Vines brought this action on behalf of herself and a proposed class of her neighbors alleging that her property—and property throughout the proposed Class Area—have been "physically invaded by noxious odors…emitted from Defendant's landfill," thereby interfering with the use and enjoyment of Plaintiff's and the Class's homes and properties. [ECF No. 1].

Following investigation by Plaintiff's uniquely experienced counsel and mediation, Plaintiff is pleased to report that the parties have reached a compromise to fully and finally resolve this case. Plaintiff hereby presents to the Court the Settlement Agreement attached hereto as **Exhibit 1** and request preliminary approval of this mutually negotiated Settlement Agreement by entry of the proposed order attached to the Agreement as **Exhibit 1-B**.

## STATEMENT OF THE CASE

Plaintiff and the proposed Class are residents of the area and neighborhoods around Defendant's Landfill in Concord. Plaintiff's complaint alleges that Defendant has failed to control and/or mitigate noxious odor emissions generated by the Landfill and have asserted claims for private nuisance *per accidens*, public nuisance, and negligence. [ECF No. 1]. Defendant vigorously denies these allegations. Plaintiff now seeks to certify a settlement class consisting of "[a]ll owner/occupants and renters of residential property residing within one and a half (1.5) miles of the Landfill's property boundary, located at 5105 Morehead Road, Concord, Cabarrus County, North Carolina, since August 14, 2021," and who do not affirmatively Opt-Out of this Settlement. The Class area includes "any residential property, all or any part of which is located 1.5 miles from the Landfill's property boundary." [**Ex. 1**, § 5.1(e)].

4

Prior to filing suit, Plaintiff's Counsel conducted an extensive pre-suit investigation including Freedom of Information Act requests to the City of Concord, Cabarrus County, and the North Carolina Department of Environmental Quality. [**Exhibit 2, Declaration of Laura L. Sheets**, ¶ 14]. Plaintiff's Counsel additionally obtained and reviewed survey responses from putative Class Members detailing their experiences with noxious odor emissions from Defendant's Landfill that would later form the basis of Plaintiff's Class Action Complaint and Jury Demand. [ECF No. 1].

Plaintiff filed her Class Action Complaint and Jury Demand on August 21, 2024. [*Id.*]. Plaintiff and Defendant continued in discovery concerning class certification issues related to Plaintiff's private nuisance *per accidens*, public nuisance, and negligence claims. The Parties engaged in substantial written discovery, including substantial document production and review.

While discovery was ongoing, the Parties agreed to participate in private mediation before respected and experienced mediator, Robert A. Meynardie. After a full day mediation on December 19, 2024, the Parties did not reach a resolution. However, following this mediation and after substantial arm's length negotiations, the Parties were able to reach a resolution of Plaintiff and the Class's claims, the terms of which were agreed in principle on July 7, 2025. The Parties jointly moved for the Court to enter a temporary stay of proceedings to allow the Parties to memorialize the terms of the proposed Settlement Agreement. [ECF No. 26]. Following the Parties' Joint Status Report on Settlement, dated November 11, 2025, [ECF No. 28], the Parties have finalized the settlement terms and present them below as memorialized by the Settlement Agreement.

**TERMS OF THE SETTLEMENT**

Under the proposed Settlement Agreement[1] [**Ex. 1**], Defendant will be required to provide monetary relief to Plaintiff and the Class in exchange for Plaintiff and the Class's release of certain claims against Defendant. Specifically, Defendant will create a settlement fund for the benefit of the Class in the amount of $675,000, which will be distributed on a pro rata basis (after the payment of costs and attorney fees as the Court may approve) to all Households that timely submit an approved Claim Form. [*Id.*, §§ 6.1, 8.4]. Additionally, the proposed Settlement requires Defendant to implement capital and operational improvements and facility changes to the Landfill over three years following the date the Complaint was filed, August 22, 2024. [*Id.*, §§ 6.7(a)-(c)]. Specifically, the Defendant will expend at least $1.025 million between 2024 and 2027 toward Odor Control measures, which may include drilling gas extraction wells, pipes, flares, pumps, or other gas control equipment or installing and operating an odor control neutralizing and masking system or early capping of waste cells. [*Id.*]. Defendant will be required to annually report each of these Odor Control Measures to Class Counsel in addition to their respective costs. [*Id.*]. The proposed Settlement includes a full release and discharge by Plaintiff and the Class of all claims that were, or could have been, that were asserted in Plaintiff's Class Action Complaint and Jury Demand. [*Id.*, § 5.1(dd)]. Importantly, the Release *expressly preserves* the Class's right to bring any claims that any may have for medical harm or personal injuries and any claims based on odor emissions that occur after Final Settlement Approval. [*Id.*].

The Settlement Agreement calls for Class Counsel to administer the Settlement and provides that notice of preliminary approval of the settlement will be distributed to the Class. [*Id.*,

---

[1] Capitalized terms used herein shall have the same meaning as assigned to them in the Settlement Agreement.

6

§ 7.1; **Ex. 1-C- Class Notice**]. The longform Class Notice attached hereto as **Exhibit 1-C** describes the terms and conditions of the Settlement and Class Members' rights in plain, easy to understand language. The Class Notice and Claim Form, attached hereto as **Exhibit 1-E**, will be provided to all reasonably ascertainable residential addresses within the Settlement Class Area via first class mail with postage pre-paid. A publication notice [**Ex. 1-D**] will also be published in a newspaper of general circulation within the Settlement Class Area. [**Ex. 1**, § 5.1(cc)]. Additionally, Class Counsel will establish a website that will be hosted at www.lsccounsel.com/cmslandfill, which will be clearly referenced on both the longform and publication notice. The website will contain relevant settlement-related documents, including a copy of the Settlement Agreement, Claim Form, Class Area Map, and the Preliminary Approval Order once entered.

The Settlement provides for a claims process through which Class Members can submit a simple Claim Form and supporting documentation to receive their share of the Settlement Fund. Class Members will have 45 days to submit a claim form and 30 days to opt-out or object to the Settlement. [*Id.*, §§ 8.1, 8.4]. Claim Forms will be approved by Class Counsel if the claimant complies with the simple requirements set forth in the Class Notice and Claim Form, which includes providing documentation confirming identity and property interest. [*Id.*, § 8.4]. Any opt outs will provided to Defendant within fourteen (14) days before the Final Fairness Hearing. [*Id.*, § 8.2].

Should the Settlement be finally approved following a Final Fairness Hearing, Defendant shall make the payment of $675,000 to Class Counsel to be held in an Escrow Account. [*Id.*, §§ 5.1(nn), 6.2]. Before the Final Fairness Hearing, Class Counsel will be prepared to submit a request for attorneys' fees not to exceed one-third (1/3) of the Total Settlement Value, in addition to reimbursement of litigation costs and expenses. [*Id.*, § 6.6(a)]. Class Counsel may also petition the

Court for an incentive award of up to $5,000 to Plaintiff Pamela Vines. [*Id.*, § 6.6(b)]. These provisions are clearly indicated in the Class Notice and the Class will be invited to make objections to the terms of the Settlement.

## LEGAL STANDARD

At the preliminary approval stage, the Court's role is to determine "whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Under Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

In reviewing a class-action settlement, the court acts as a fiduciary for the class and carries with it the necessary duties that role entails. *See Sharp Farms v. Speaks*, 917 F.3d 276, 293-94 (4th Cir. 2019). While undertaking this role, however, the court need not make dispositive conclusions on unsettled questions but instead should "limit its proceedings to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975).

"[A]t the preliminary approval stage, the court determines whether the proposed settlement is 'within the range of possible approval' or, stated differently, whether there is 'probable cause' to give notice of the proposed settlement to class members." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-cv-00400-BR, 2009 WL 2208131 at *23 (E.D.N.C. July 22, 2009) (quoting *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F.Supp. 825, 827 (E.D.N.C. 1994)). "[T]he Fourth Circuit has bifurcated the [preliminary approval] analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on

8

whether the consideration provided the class members is sufficient." *Id.* (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)).

"A four-factor test is applied to determine the fairness of a proposed settlement: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area [of law at issue]." *Seaman v. Duke Univ.*, No. 1:15-CV-462, 2017 WL 11502696, at *4 (M.D.N.C. Sept. 29, 2017) (citation omitted). Additionally, "[t]he Court assesses the adequacy of the Settlement through the following factors: '(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter inf the case goes to trial; (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.* (citation omitted).

## ARGUMENT

**I.    The Court Should Certify the Proposed Settlement Class.**

To satisfy Rule 23(a), a plaintiff demonstrates that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Finding these prerequisites met, a court may then certify a class over common questions that predominate over questions affecting only individual members and where a class action presents the superior method for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The Proposed Class satisfies each of the requirements for class certification under Rule 23(a) and Rule 23(b)(3) and thus should be certified for the purposes of settlement.

9

### A. Numerosity is Easily Satisfied, and the Proposed Class is Readily Ascertainable.

The numerosity inquiry is determined by the number of all class members to render joinder impracticable. The Fourth Circuit has recognized that "no specified number is needed to maintain a class action," and that "a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021); *see also Ciarciello v. Bioventus Inc.*, 760 F.Supp.3d 377 (M.D.N.C. 2024). In hand with the numerosity requirement, courts in the Fourth Circuit have recognized that there is also an implicit requirement that the proposed class be "readily identifiable." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).

Plaintiff has proposed and Defendant has agreed to a Settlement Class of all owners/occupants and renters of residential property residing within one and a half miles of the Landfill's property boundary. Within the geographic boundary, there are over 2,800 households. [**Ex. 2**, ¶ 16]. Joinder of over 2,800 potential plaintiffs would be overwhelmingly impracticable, unnecessary, and difficult to manage in this case. Numerosity is therefore undoubtedly satisfied.

Furthermore, the proposed Settlement Class is readily ascertainable, as it is defined with reference to objective criteria—ownership, residency, or submission of a Data Sheet—within the limited geographic area illustrated in **Exhibit 1-A**. The claims at issue arise from damage to real property, the locations of which are integral to the very definition of the Class. Indeed, to determine whether a Household is a member of the Class, all that is required is to determine whether that Household is located within the Class Area boundary and whether it is owner-occupied or rented. The addresses of all residential households in the Settlement Class Area have already been obtained, and all potential Settlement Class members will receive a Class Notice form at their residence by first class mail. (**Ex. 1-C**- Class Notice). Additionally, each settlement Class member

will be required to confirm that they reside within the Settlement Class Area by affirming ownership or renter status by attaching a copy of valid documentation. (*See* **Ex. 1-E**- Claim Form). The Class is therefore readily ascertainable, and the proposed settlement administration process will ensure that only verified Settlement Class Members receive compensation from the common fund.

**B. There are Several Questions of Law and Fact Common to the Class.**

Commonality requires that there exists at least one question common to the class that is "of such a nature that its determination will resolve an issue that is central to the validity of each of the claims in one stroke." *EQT Prod. Co.*, 764 F.3d at 360 (4th Cir. 2014). The set of claims must depend on a contention that is "capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes* 564 U.S. 338, 350, 131 S.Ct. 2541 (2011).

The common material issues in this case are overwhelming and include, *inter alia*, whether Defendant:

1. negligently and knowingly failed to reasonably maintain and operate the landfill to prevent off-site odor emissions;
2. could reasonably foresee that its failure to properly maintain and operate the landfill would result in an invasion to Plaintiff and the Class's property interests;
3. satisfied its standard of care owed to Plaintiff and the Class in its landfill operations;
4. dispersed noxious odors over the Class Area;
5. created a degree of harm to Plaintiff and the Class that constitutes a substantial annoyance or interference; and,
6. caused damages and to what extent the damages incurred by Plaintiff and the Class are properly measured.

The evidence involved in answering those common legal questions involves common evidence and factual issues that can be resolved through common redress. While Plaintiff only needs to identify a single issue common to all members of the class, the most pertinent questions of law and fact overwhelmingly involve common issues.

**C. The Claims of the Named Plaintiff are Typical of the Claims of the Class.**

The typicality requirement is met "where the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members." *Tatum v. R.J. Reynolds tobacco Co.*, 254 F.R.D. 59, 65 (M.D.N.C. 2008). "Typicality does not require 'that the plaintiff's claim and the claims of the class members be perfectly identical or perfectly aligned'—some minor variation between a named plaintiff's individual claim and those of the class members she aims to represent is to be expected." *Gaston v. LexisNexis Risk Sols., Inc.*, 483 F.Supp.3d 318, 338 (W.D.N.C. 2020) (quoting *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006). "The typicality requirement is designed to ensure that there is enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Id.* (internal quotation marks and citation omitted).

Plaintiff brings common claims for negligence and public and private nuisance from airborne common source emissions from Defendant's landfill. Defendant's common course of conduct has similarly impacted residents throughout the community. Plaintiff's claims, and those of the absent Class Members, entail the same type of damages for the same type of injury caused by a common course of conduct by Defendant. Plaintiff and the Class have similarly suffered the same substantial annoyance and inference by the Defendant's emissions, loss of use and enjoyment of their homes and properties, and diminution in property values. Additionally, there are no conflicts between Plaintiff and the absent class members, and there is no basis for holding that the typicality requirement is not satisfied in this case.

**D. Plaintiff and Class Counsel Satisfy the Adequacy of Representation Requirement.**

Plaintiff will fairly and adequately protect the interests of the class as required under Rule 23(a). Courts have delineated two major components to the adequacy prong, where "(1) the

interests of the proposed class representatives and class members must coincide; and (2) the plaintiffs' attorneys must be qualified, experienced, and able to conduct the litigation." *In re Under Armour Sec. Litig.*, 631 F.Supp.3d 285, 308 (D. Md. 2022). "To meet [the adequacy of representation] requirement, plaintiff[] must demonstrate that the named class representative[] (1) 'will vigorously prosecute the interests of the class through qualified counsel' and (2) that they have 'common interests with unnamed members of the class.'" *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-cv-00400, 2009 WL 2208131, at *15 (M.D.N.C. Jul. 22, 2009) (quoting *Olvera-Morales v. Intern. Labor Mgmt Corp.*, 246 F.R.D. 250, 258 (M.D.N.C. 2007)). "[C]ourts generally hold that employment of competent counsel assures vigorous prosecution." *South Carolina Nat. Bank v. Stone*, 139 F.R.D. 325, 331 (D.S.C. 1991).

Plaintiff, like all other similarly situated Settlement Class members, is a community resident complaining of the same odor problem that has plagued her neighbors. Plaintiff has demonstrated no conflict of interest with the absent Class Members and have retained Class Counsel with significant experience conducting environmental class action litigation. Plaintiff's Counsel has successfully resolved many dozens of similar environmental lawsuits for property damage, the vast majority of which were brought and resolved on a classwide basis. [**Ex. 2**, ¶¶ 6-7].

Accordingly, Plaintiff and Class Counsel will continue to fairly and adequately protect the interests of the proposed Settlement Class and the adequacy requirement is met.

### E. For a Class seeking Certification over Common Questions of Law and Fact, the Predominance and Superiority Requirements are both Satisfied.

To satisfy Rule 23(b)(3), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Class meets and exceeds both subsequent certification requirements.

### 1. The Class's Common Questions of Law and Fact Predominate over Questions of Individual Members.

The object of the predominance test is "to determine whether the class at issue is cohesive enough to warrant adjudication by representation." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 323 (E.D. Va. 2003); *see also Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 226-27 (E.D Va. 2003) (decided under Rule 23(b)(2) but found that varied easements in class area properties did not undermine categorical treatment for the predominance requirement). Indeed, "the entire notion of predominance implies that the plaintiffs' claims need not be identical" *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019). Instead, "courts focus on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones." *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 80 (D. Md. 1991) (citations omitted).

Any individual issues that may exist among the Class are easily outweighed by the common issues related to Defendant's alleged conduct, the dispersion of Defendant's alleged emissions, and the impacts to the community. Plaintiff has presented substantial evidence through the course of this litigation that the proposed Settlement Class Area has been impacted in a similar manner and to a similar degree. Individual issues are therefore of minimal importance, particularly in light of the Settlement Agreement which provides for a distribution of settlement funds on a common and equitable basis to all qualifying residents who submit a valid Claim Form. Plaintiff submits that there are simply no individual issues left among the proposed Settlement Class that may overwhelm the predominating common issues.

## 2. Class Certification is the Superior Method for the Fair and Effective Adjudication of this Litigation.

"Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Hicks v. State Farm Fire and Cas. Co.*, 965 F.3d 452, 464 (6th Cir. 2020) (citation omitted). Courts are afforded significant discretion in superiority determinations and may freely compare the possible alternatives to class certification in finding a class action the effective vehicle for adjudication. *See Stillmock v. Weis Markets, Inc.*, 385 Fed.Appx. 267, 273-74 (4th Cir.) (quoting 7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1779 (3d ed. 2005).

The issues of predominance and superiority are fully within the discretion of the Court, and the Court is left with a pragmatic choice regarding how to handle these multitudinous claims. By denying class certification, two results are inevitable: (1) there will be a stream of individual litigants filing claims in a disjointed and inefficient proceeding with multiple discovery schedules, disjointed trial plans, redundant discovery and motion practice, and wasted resources for the Parties and the Court; and (2) many working class residents impacted by Defendant's emissions will be left without representation or a meaningful opportunity to seek relief. The class action device exists for the very purpose of avoiding these problems. *See Amchem Prods. Inc., v. Windsor*, 521 U.S. 591, 617 (1997).

By conditionally certifying the Class for settlement, pursuant to Fed. R. Civ. P. 23(b)(3), the Court can bring numerous overwhelmingly common claims under one tent. These claims, established individually, would otherwise be overly burdensome. Certification is the superior option for managing the case, ensuring efficiency, protecting judicial economy, and ensuring that

15

all affected residents in the Class are afforded adequate representation and the opportunity for relief.

## II. The Court Should Find that the Proposed Settlement is Fair, Reasonable, and Adequate under Fourth Circuit Standards.

To preliminarily approve a class action settlement, Fed. R. Civ. P 23(e)(2), courts must find that the settlement is "fair, reasonable, and adequate." This inquiry has been bifurcated in the Fourth Circuit to fairness and adequacy, with both requirements assessed under a multifactor review. *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 483-84 (4th Cir. 2020). The settlement presented meets the 23(e)(2) requirements and all enumerated factors.

### A. The Settlement is Fair as an Outcome of Good Faith Bargaining and Arm's Length Negotiation following Discovery.

The factors in determining fairness for the settlement are "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that has been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation." *Id.* at 484.

The posture of this case and the extent of discovery favor settlement following arm's length negotiation and mediation. The parties have engaged in extensive litigation and discovery on this case, including but not limited to sets of discovery requests, an expert report, and mediation. Prior to the filing of the Complaint, Plaintiff's Counsel had made significant steps to investigate Defendant's landfill operations, requesting records from the North Carolina Department of Environmental Quality. This does not include the dozens of putative class members who have submitted their own personal reports documenting their experiences with Defendant's odor emissions. The first and second factors thus favor resolving the case through settlement.

16

On the third factor, the negotiations and subsequent Settlement are a product of mediation. The Settlement was reached with assistance of a respected and experienced mediator, Robert A. Meynardie after a full day mediation on December 19, 2024. After no settlement was reached at the mediation, the Parties continued extensive, arm's length negotiations until coming to a settlement in principle on July 7, 2025. While necessarily a compromise, the Settlement addresses the concerns of Plaintiff and the Class while delivering valuable monetary relief.

Finally, Counsel is highly experienced in this area of class action, litigating environmental class and mass tort actions, including landfill odor nuisance cases, who were adequately informed of both the strengths and weaknesses of Plaintiff's case. Counsel is one of the few, if not only, plaintiffs' firms in the country that devotes a substantial portion of its practice to litigating class claims of this niche type. [**Ex. 2**, ¶¶ 4-5]. Accordingly, Class Counsel has represented many dozens of certified classes as class counsel and has administered many dozens of similar settlements. [*Id*.]. Counsel has the experience and resources to administer and effectuate the Settlement here.

**B. The Settlement is Adequate and Reasonable Considering the Balance of Interests in Further Litigation.**

The settlement is deemed adequate when a balance of the following factors favor the proposed settlement: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *Id*. (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)). While there are not enumerated factors as to the reasonableness of the proposed settlement, courts may assess whether a class settlement is reasonable by examining the amount of the settlement. *1988*

*Tr. For Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 527 (4th Cir. 2022) (citing *Sharp Farms*, 917 F.3d at 303-04).

First, Plaintiff has a strong case on the merits. In recent years, courts have been increasingly favoring class certification of air pollution cases of this kind, as it is overwhelmingly evident that it presents the superior method of available adjudication. Indeed, Plaintiff's Counsel has also achieved recent class certification decisions in the following cases: *Ortega v. A-F Acquisition, LLC*, Case No. 2023CH02274 (Ill. Cook Cnty. Cir. Ct.) (certified October 23, 2025); *Baranofsky, et al. v. Rousselot Peabody, Inc.*, Case No. 2084CV00896-BLS2 (Massachusetts Superior Court, Suffolk County) (certified June 13, 2022); *Sutton v. Apex Environmental, LLC*, Case No. 20-CV-116 (Ohio Ct. Comm. Pleas, Jefferson Cnty.) (certified September 23, 2022); *Gonzales, et al. v. Clark-Floyd Landfill, LLC*, Case No. 10C02-1608- CT-000131 (Ind. Clark Cnty. Cir. Ct., Oct. 18, 2019). This Court should note that both Apex and Clark-Floyd were similarly fashioned nuisance odor cases against landfills.

Despite the strengths of Plaintiff's case, litigating air pollution class actions is inherently costly and time-consuming given the involvement of highly specialized experts and the necessity for extensive documentary and testimonial evidence. *See Seaman v. Duke Univ.*, 2017 WL 11502696 at *4 ("With respect to the first and second factors, '[r]egardless of the strength of a claim on the merits, one can never ensure a finding of liability in complex litigation' …"). The class certification stage alone typically lasts for a period of years and involves costs, particularly expert costs, that are typically in the high five to low six figures. [**Ex. 2**, ¶ 28]. Litigating beyond the class certification stage would necessarily involve additional voluminous discovery and likely hundreds of thousands of dollars' worth of additional expert testimony. Such litigation could

proceed for several years through trial and possibly appeal. The second and third factors weigh against further litigation and favor settlement on balance with the strengths of this particular case.

To the fourth factor, there is no doubt that Defendant is solvent, and the recovery on the litigated judgement is high. Defendant is a multibillion-dollar company and is one of the largest of its kind in the country. There is little to no risk that the value of the Settlement will not be recovered by virtue of Defendant's insolvency.

Fifth, there will not likely be significant opposition to this settlement. Class members will be in a significantly better position than before this lawsuit was initiated. The Settlement achieves substantial benefits for the class without expending additional resources and without delay. The Class will obtain immediate relief, as opposed to waiting years for an uncertain outcome, if it arrives at all. However, the reaction of Class Members will not be fully realized until they are provided Notices and can opt out or object to the settlement. As demonstrated through the Class Notices, Class Members will receive comprehensive information regarding the terms of the Settlement Agreement and receive detailed instructions on how to object to the proposed settlement, if applicable. [**Ex. 1-C**].

Finally, the Settlement is reasonable because it presents a reasonable sum to be paid to the Settlement Class. Courts traditionally look to the settlement amount to ensure "that the amount on offer is commensurate with the scale of the litigation and the plaintiff's chances of success at trial." *1988 Tr. For Allen Child*, 28 F.4th at 527; *see also* 4 Newberg on Class Actions § 13:51 (5th ed. 2014) ("the court must at least satisfy itself that the class settlement is within the 'ballpark' of reasonableness"). The instant settlement provides for $675,000 in cash and $1.025 million in improvement measures, an excellent result for the Class in terms of both categories of relief sought in this case.

### C. The Settlement Satisfies the Additional 23(e)(2) Factors.

As set forth in Fed R. Civ. P. 23(e)(1)(B)(i), the Court is also directed to consider the following factors in a finding of a fair, reasonable, and adequate settlement: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats Class members equitably to each other. Each of the foregoing factors is satisfied here.

Factors (A) through (C) have been demonstrated above in sections II.A and II.B. With respect to factor (D), the Court should finally conclude that the Settlement treats all Class Members equally. There are no significant concerns regarding the equitable treatment of Class Members relative to one another. Every member of the Class will have an equal opportunity to collect on the monetary relief, receiving one equal share of the common fund following submission of a timely and valid claim form. Because the Settlement will be divided based on equal shares of the common fund, there is no dispute that Class Members have been afforded equitable treatment.

## IV. The Notice Plan Set Forth in the Settlement Agreement is Appropriate.

As required by Fed. R. Civ. P. 23(e)(1)(B), a court must also "direct notice in a reasonable manner to all class members who would be bound by the proposal…" and that the notice itself is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Settlement Agreement calls for the proposed longform notice (**Ex. 1-C**) to be sent via first class U.S. Mail, postage prepaid, to all reasonably obtainable addresses within the Class Area. [**Ex. 1**, § 7.3]. The Notice will be mailed, along with a copy of the claim form, via direct mail within 21 days of the Court's preliminary approval order, **Exhibit 1-B**.

Additionally, the proposed publication notice will be published in a newspaper of general circulation in the Class Area. Class Counsel will establish a Settlement Website that will be hosted at www.lsccounsel.com/cmslandfill, which will be clearly referenced on both the longform and publication notice. The Settlement Website will contain settlement-related documents, including copies of the Settlement Agreement, Claim Form, and the Preliminary Approval Order.

The proposed notice program clearly informs Class Members, in plain, easy to understand language, about their rights to make claims, opt-out, or object to the Settlement, including all the pertinent deadlines for doing so. Direct mail notice is the hallmark of adequate notice under Rule 23 and the U.S. Constitution in class cases. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175, 94 S. Ct. 2140, 2151 (1974).

Accordingly, the proposed notice program is adequate, fully informs Class Members of their rights, and complies with Rule 23 and due process requirements.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Honorable Court grant her unopposed Motion for Preliminary Approval of the Class Action Settlement.

Dated: December 9, 2025        Respectfully Submitted,

*/s/ D. Reed Solt*
Steven D. Liddle (P45110)
Laura L. Sheets (P63270)
D. Reed Solt (P86302)
**LIDDLE SHEETS P.C.**
975 E. Jefferson Avenue
Detroit, Michigan 48207-3101
Tel: (313) 392-0015/Fax: (313) 392-0025
sliddle@lsccounsel.com
lsheets@lsccounsel.com
rsolt@lsccounsel.com

*Attorneys for the Plaintiff and Putative Class*

21

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.3(d)(1)

I hereby certify that the foregoing brief in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement [ECF No. 29] contains approximately 5,442 words and therefore complies with L.R. 7.3(d)(1).

*/s/ D. Reed Solt*

D. Reed Solt